UNITED STATES of America, Plaintiff,

v.

**Richard MINNS, Defendant.**

**Criminal No. H-93-68.**

United States District Court, S.D. Texas, Houston Division.

Oct. 20, 1994.

---

Bertram A. Isaacs, Assistant U.S. Attorney, Houston, Texas, for Plaintiff.

Michael W. Ramsey, Houston, Texas and Stanley G. Schneider, Houston, Texas, for Defendant.

OPINION ON VENUE

HUGHES, District Judge.

1. *Introduction.*

Richard Minns has sought to dismiss the indictment against him because it was brought in the wrong place. The location for indictment and trial of people accused of committing federal crimes outside the United States is "in the district of the last known residence" of the accused. 18 U.S.C. § 3238. Venue in the Southern District of Texas is proper.

2. *Minns & Houston.*

Over the last decade or more, Minns has used the alternative names Richard Minns, Allen Harlan Richardson, and Richard Louis O'Toole. On several occasions, in different places and under varying circumstances, Minns has told the government of the United States that he had these Houston addresses:

| December 9, 1980 | Houston Passport Agency | 7255 Clarewood Drive |
| May 29, 1981 | Houston Passport Agency | 7255 Clarewood Drive |
| June 5, 1981 | New Orleans Passport Agency | 1385 Woodway Drive |
| October 15, 1985 | New Orleans Marshal | 7510 Brompton |
| October 15, 1985 | New Orleans Marshal | 7255 Clarewood Drive |
| August 27, 1986 | Swiss American Consul | 1385 Woodway |
| October 20, 1986 | London American Consul | 12522 Old Oaks Drive |

■ Minns asserts that his Clarewood address cannot have been his residence because that address is for an office building. The problems with this contention are: First, it is possible to live in an office building. Second, whether Minns actually lived at the Clarewood address is not necessary to his having established a residence in Houston. Third, Minns argues that a business address in Houston cannot be a residence, yet he has consistently stated his overseas residence as 7 Avenue Pictet-de-Rochemont, 1207 Geneva, Switzerland; that is the address of Mayo Associates, S.A., which is a business name and, presumably, a business address. Minns gave that address in Geneva as his residence to the Dublin American Consul on September 26, 1986, to the London American Consul on October·16, 1986, and again to the Dublin American Consul on August 19, 1991. To Minns, a business address can be a residence in Geneva but not in Houston.

### 3. California Residency.

In his effort to dismiss the indictment, Minns asserts that he established a home in Southern California in April 1982, when he moved there to start a new business and that he maintained that residence until February 1983. His evidence consists of hotel receipts and the testimony of his wife.

#### A. Marina Del Rey.

Minns claims his stays at the Marina City Club at the Marina Del Rey in Los Angeles, California, established his home there, evincing the intention to remain permanently. During the time he would have established a residence through his occupancy of a room at the Marina City Club, Minns moved from one room to another and stayed at two other hotels, Century City and L'Hermitage.

The hotel bills for the marina stays list 7255 Clarewood Drive, Houston, as the Minnses' "billing/home address". His wife testified that they looked for a home to buy and that the hotel room contained only hotel furniture.

#### B. Divorce Court.

In answers to interrogatories during a divorce proceeding in Houston in 1985, Minns told the court that he had lived at 7 Avenue Pictet-de-Rochemont, 1207 Geneva, Switzerland, since June 1982. Minns stated that he did not return to the United States until the spring of 1983—and then only temporarily—and that he had resided primarily in the United Kingdom and Switzerland from 1982 until 1985. Minns's own sworn statements have him establishing a residency in Los Angeles while living in Geneva.

Although Minns contested the Texas court's jurisdiction, he merely denied being a resident of Texas, wholly omitting assertion or proof of a residence elsewhere. His pleading was a bare denial; nowhere did he allege a California residence.

Minns has offered other pleadings from the divorce brought by Barbra Piotrowski in Houston, but the question in those instruments was whether Piotrowski met the statutory requirement that she reside in Texas for one year before instituting the divorce. Piotrowski's residence is not an issue here.

### C. Determining Residence

■ People who are not lawyers would reasonably expect that a recurring question like how to determine residency would have been long ago clearly defined, but they have not reckoned with the variety of human experience. The best that the law can do is to examine a person's overall activity to distill what a reasonable, disinterested, fully-informed person would conclude was the person's objective and subjective intention.

Unquestionably, Minns has maintained a continuous presence in Houston. Even though residence and address are frequently distinct, he has given Houston addresses to the government and others. He maintained an office in Houston even while claiming to live in Europe, and he relied on his Houston secretary as his emergency address when claiming to the New York Passport Agency that his "permanent" address was Marina Del Rey. The secretary forwarded mail to him elsewhere, but the actual permanency of the Clarewood address is more important than the eventual

destination of his mail. When Minns left for Switzerland, his secretary arranged for his car and other possessions to be returned to Houston. Minns has been in Houston through a continuous business presence, occasional but persistent occupancy, and a permanent address.

Minns paid his club and hotel bills with checks drawn on two bank accounts in Houston. Independently, the location of a bank account is no evidence of the location of the account holder, but in conjunction with the location of the business that held the account and other data showing a direct connection with the place, his continuing authority over the bank accounts helps persuade. Minns's residence was Houston.

### 4. Known

Whether Minns intended to or did establish residency in California, an indictment is proper in the district of last *known* residence. Houston was Minns's last known residence in the United States. Minns now attempts to reconstruct an established residence in California, but the need to reconstruct and the paucity of evidence support the conclusion that the California residence was not known. The government did, however, know about several Houston addresses.

 Minns himself consistently stated to the United States government that his address was in Houston. The government must act rationally in determining an expatriot's last domestic address. In a reasonable effort to obtain the defendant's present or past residence, the government looked for other addresses for Minns in the United States. A nationwide search of drivers' licenses did not reveal a license issued to Minns in any name in any state besides Texas.

To get a passport in New York, Minns used a Texas identification card with a Texas address, a California identification card with a California address, a Social Security card with a different California address, and a health insurance card with a different Texas address. That numerous other addresses could be found but that no residence appeared to have been established meant that Minns's last known residence was in Houston whatever the address might have been. A prolonged search of past and possible addresses for Minns in the United States would impose needless expense on the government when it had multiple representations and independent evidence of a Texas residency before he went abroad. More is not required by the Constitution. U.S. Const., art. III, § 2; 18 U.S.C. § 3238.

Reliance on Minns's own statement to the United States government of his residence is not unreasonable. He indicated on numerous occasions that he lived in Houston. Federal law specifies that venue is proper in the district of last known residence. Minns's last known United States residence was in Houston, Texas.

### 5. State of Arrest.

 Even if Minns had established residence elsewhere, venue would still be proper in Texas. The Constitution requires trial in the state in which an offense was committed, but for federal crimes committed outside the United States, the constitution permits Congress to assign venue. Congress has specified that venue is proper in the state where a defendant is "arrested or first brought." 18 U.S.C. § 3238. Minns was arrested in Dallas. The Constitution and statutes consistent with it allow venue in Texas.

### 6. Publicity.

 Minns asks that the trial of his passport charges be transferred elsewhere in the Southern District of Texas because a fair jury cannot be selected in Houston. Minns is known in Houston for any of three reasons:

- He was a highly successful businessman who built a chain of health clubs in the 1970s;

- He has been the subject of wide publicity because of the passport charges against him; and

- He has been the subject of publicity in the news and entertainment media arising out of the attempted assassination of his former girl friend, Piotrowski.

This last incident has generated virtually all the publicity about Minns. His relation to Piotrowski has been the subject of the criminal trials of the gunman, getaway driver, and intermediary hired to kill Piotrowski. Minns has never been charged with a crime in connection with the crippling of Piotrowski in the murder attempt. Collateral civil litigation included a divorce action brought by Piotrowski and a battery claim for damages. The divorce was dismissed, and the personal injury action resulted in a judgment for Piotrowski against Minns for $32 million. The personal injury judgment has not been superseded but is on appeal.

## 7. Duration & Volume.

Minns emphasizes that this negative publicity has been a recurring theme in this region for fifteen years. He believes that, because fifteen years is roughly one-half of the life of an average juror, potential jurors will have grown up hearing bad things about him. The duration of the Minns–Piotrowski story is undoubted. By Minns's calculation, 90% of the story content in the news since his arrest on the passport charges has been in connection with Piotrowski.

The total volume of publicity has been spread over fifteen years. The Minns stories have been mixed with other news during the last 5,478 days. In the time Minns claims Houston has been mesmerized by stories about him, the impact of those stories has been diluted by news of other national and local events, like three presidents taking office, world-champion Rockets, the rise of AIDS, the boom and bust of the 1980s, the Gulf War, and Hurricane Alicia. The bulk of the Minns stories is large, but that bulk has been dissipated through 780 weeks of other news.

## 8. Collateral Matter.

In most cases, it is the very infamy of the crime on trial that generates popular interest. News about Minns has largely addressed his connection with Piotrowski rather than the charges that will be tried before a jury in this court. The collateral scandal will apparently be part of the defensive argument, so the court assumes that the emotional distractions of sex and violence arising from it will be related to this case.

## 9. Unbiased ≠ Ignorant.

The suggestion that a fair jury can be selected only from people who do not know the defendant and, indeed, have never heard of him is a parody of the function of the jury. Only recently have a majority of Americans lived in mass metropolitan regions. The constitutional requirement for a trial where a crime was committed was designed to prevent the government from frustrating a defendant by dragging him to a hostile neighborhood, away from community support and away from convenient witnesses and counsel.

Keeping the trial close to the offense places the defendant before a source of jurors that is tainted by the recent publicity of the crime and the historic exposure of the community to the defendant. The defendant may ask to move the trial, but the scope of most moves is relatively modest. Such a transfer is usually to another court in the same state, although this move can be significant in a few states. Even in large states, truly prominent crimes will generate widespread publicity.

Another bias that might produce a transfer is a conclusion that the verdict in the trial may have a local-pride effect, usually a concern that the community is embarrassed by the act or defendant. Until recently, most trials were in small cities and towns where the community has had at least a passing exposure to the crime and the defendant in several contexts.

The court's task then and now is to ascertain as best it reasonably can whether individuals have formed an opinion sufficiently strong that they cannot make the commitment in good faith to base their verdict on only the evidence they hear in court and the law as instructed by the court.

## 10. Dishonestly Vengeful Venire.

Minns has suggested that people summoned to hear this case will not, while under oath, truthfully disclose their hostility toward him. If we assume that jurors will be dishonest and vindictive, the whole enterprise fails. If people in the thirteen counties surrounding Houston will lie under oath to convict Minns, so will the people from the two

counties surrounding McAllen or any other trial site. True, occasionally people have biases of which they are unaware, but prejudice against a famous figure is unlikely to be unconscious. True, too, among us there are liars, but the court and counsel will be alert to detect signs of dissimulation.

In the unlikely event that it proves impossible to impanel an unbiased jury, the court will transfer the proceedings and begin anew.

11. *Conclusion.*

Minns has fled from Texas and from the United States, leaving his last established residence which was reasonably knowable in Houston. He has been in many places in the United States while and since leaving Texas, but his presence elsewhere in the United States has always been ephemeral. His challenge to the place of indictment will be denied.

The traditional techniques for assuring an impartial jury will adequately protect Minns in this context, but if they become ineffective, an alternative will then be fashioned. His request for a trial in a place other than Houston will be denied.